## John J. McKeon vs. George C. Tyler.

Suffolk.   October 20, 1925. — December 1, 1925.

Present: Rugg, C.J., Braley, Crosby, Carroll, & Sanderson, JJ.

*Broker*, Commission.   *Agency*, Existence of relation.   *Practice, Civil*,
Finding by judge, Exceptions.

A broker cannot recover from the owner of a play a commission for making
a sale of motion picture rights in the play unless he shows that he was
employed by the owner to procure a customer: he does not earn a
commission by merely offering his services to the defendant, even if
the defendant avails himself of information then given and sells the
property to the broker's customer.

A play broker inquired of the owner of a play relating to a sale of motion
picture rights therein, and the owner stated to him that they were not
for sale and that he did not know when they would be.   Under ur-
gency of the broker, the owner allowed himself to be introduced to a
moving picture manufacturer, to whom he repeated what he had said
to the broker and would state only that, when the time came to sell,
he would notify the manufacturer so that he could get the first chance
to buy.   Over five months later, the owner decided to sell the rights,
informed the manufacturer whom the broker had introduced to him
and one other in the same business, and finally sold to the manufacturer
introduced by the broker.   In an action by the broker for a commission,
it was *held*, that

(1) Taking advantage of the services performed by the broker,
without some evidence to show an original employment or subsequent
ratification, did not make the defendant liable;

(2) No agency either express or implied was shown and there was
no evidence of ratification;

(3) The defendant was not liable.

Contract for $10,000, alleged to be a "commission due
on the sale of motion picture rights of the play 'Merton of
the Movies.'"   Writ dated February 18, 1924.

In the Superior Court, the action was heard by *McLaugh-
lin*, J., without a jury.   Material evidence and findings by
the judge are described in the opinion.   There was a finding
for the plaintiff in the sum of $10,569.34.   The defendant
alleged exceptions.

*J. A. Brackett*, for the defendant.

*A. D. Hill*, (*F. Adams* with him,) for the plaintiff.

CARROLL, J.   This is an action to recover a broker's commission for the sale of a motion picture play, known as "Merton of the Movies," to the "Famous Players-Lasky Corporation."   The plaintiff was a play broker negotiating the sale of plays, spoken and pictured.   The judge, sitting without a jury, found for the plaintiff.   In the findings and rulings of the judge it is stated: "I have accepted the defendant's version of this matter in all material respects in which his testimony differs from that of the plaintiff, drawing such inferences therefrom as seem just and reasonable."

The plaintiff had acted for the defendant in the sale of a play for which a commission was paid to him by the defendant.   At the time of the transaction in question, the plaintiff said to the defendant, "What about 'Merton of the Movies' for motion pictures?" to which the defendant replied, "'Merton of the Movies' . . . [is] not for sale for motion pictures"; he also stated that "Merton of the Movies" was now playing to capacity; that he expected it would run in New York for two or three years; that he did not know when it would be sold.   The plaintiff then asked the defendant if he would not like to meet one Lasky, representative of the "Famous Players."   To this the defendant said he saw no reason for meeting Lasky, "that he had nothing to sell him."   When asked if he would see Lasky if the plaintiff brought him to his office, the defendant said he would be pleased to see him whenever he called.   On the next day the plaintiff brought Lasky to the defendant's office; at this interview Lasky proposed to the defendant to buy "Merton of the Movies."   The defendant replied "How in the world can I sell 'Merton of the Movies'?   I don't know when it could be released, I don't know when I can sell it."   The defendant testified he believed that at that time it would run for five years.   Lasky then suggested that if the play was in the market at any time in the future "it comes to us."   The defendant in answer to this proposition said "No, I couldn't do that."   When the question of price was mentioned the defendant declared: "That wouldn't influence me at all. It is not for sale."   He further stated that he had already made an arrangement with one Hunter, by which the play

was not to be sold to "any one else provided he can give me as much money as anybody else will offer when the time comes." The defendant in response to a remark by Lasky, "When the time comes to sell it let us know," said, "When the time comes to sell it I will notify you so that you get the first chance to buy it, I can't say when that will be." The plaintiff was present at this interview.

About five months after this conversation, the defendant returned from Europe and found that the attendance at "Merton of the Movies" was falling off. He decided to sell the motion picture rights and directed his manager to take up the matter with the various motion picture companies, saying to him in substance, "Don't forget one thing. I have agreed with Mr. Lasky that when the time comes to sell, . . . he is to be notified, . . . let him know at once." The manager informed Lasky and another person who was in the moving picture business, that the defendant was willing to sell, and shortly after, in December, 1923, the play was sold to the Famous Players-Lasky Corporation for $100,000. The judge found for the plaintiff and the defendant excepted.

The plaintiff cannot recover unless he was employed by the defendant to make the sale. This agency and authority must be shown. He did not earn his commission by merely offering his services to the defendant, even if the defendant availed himself of the information and sold the property to the broker's customer. *Cook* v. *Welch*, 9 Allen, 350. *Geier* v. *Howells*, 47 Col. 345. See in this connection *Johnstone* v. *Cochrane*, 231 Mass. 472, 479.

The testimony of the defendant, which was accepted by the presiding judge as true, shows that at the time, when the plaintiff suggested the sale of the play, the defendant believed it would continue to succeed as a spoken play for an indefinite period. He had no intention of selling the moving picture rights, and he stated distinctly that it was not for sale. His willingness to meet Lasky does not contradict the fact that the defendant had no intention of selling the play at that time or at any other time in the future. There was no employment of the plaintiff in this particular trans-

action, and nothing appears from which it could be inferred
that he was the defendant's agent.   The defendant's positive
and definite refusal to sell, negatives any employment of the
plaintiff at that time.   The fact that the defendant stated
to Lasky in the plaintiff's presence that he would notify the
Famous Players-Lasky Corporation and give them the first
chance to buy, whenever he decided to sell, is not enough to
show that the plaintiff was the defendant's agent.   Nor is
the circumstance that subsequently, when he sold the moving
picture rights, he sold to this corporation, sufficient to give
the plaintiff a right to recover against the defendant.   The
information furnished by a broker, who is not employed by
the seller, may be availed of by him without making him
liable to pay a commission.   Taking advantage of the serv-
ices performed by the broker, without some evidence to
show an original employment or subsequent ratification,
does not make the defendant liable.   See in this connection
*Harris Brothers* v. *Reynolds*, 17 N.D. 16; *Castner* v. *Richard-
son*, 18 Col. 496; *Clammer* v. *Eddy*, 41 Col. 235; *Stevens* v.
*Bailey & Howard*, 149 Ala. 256.

Although the defendant knew the plaintiff was a broker,
in view of the defendant's positive refusal to sell, no agency
either expressed or implied was shown and there was no
evidence of ratification.   In *Hall* v. *Grace*, 179 Mass. 400,
the plaintiff continued to deal with the defendant's land up
to the time of sale and was recognized as the defendant's
agent.

The transaction in question took place in New York, but
there is nothing to show that the law of New York bearing on
the question differs from the law of Massachusetts.   *Farmers
National Bank of Annapolis* v. *Venner*, 192 Mass. 531, 535.

As there was no evidence that the plaintiff was employed
by the defendant to act as his agent, the order must be

*Exceptions sustained.*